**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **JAMES E. EICHELBERGER,** | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. CBD 08-1621 |
| **MICHAEL J. ASTRUE,** | * | |
| Commissioner, Social Security Administration | * | |
| Defendant. | * | |

******

## MEMORANDUM OPINION

James E. Eichelberger ("Plaintiff") brought this action under 42 U.S.C. § 405(g) (2004) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§ 401-433 (2004). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (Docket Item No. 9) and Defendant's Motion for Summary Judgment ("Defendant's Motion") (Docket Item No. 16). The Court has reviewed said motions and the applicable law. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

1

**I.      Procedural History**

On July 7, 2004, Plaintiff filed an application for DIB. R. 97. His claim was denied initially and upon reconsideration. R. 30, 35. Plaintiff consequently requested an administrative hearing, which was held on October 5, 2006. R. 37. On January 24, 2007, an Administrative Law Judge ("ALJ") determined in a written decision that Plaintiff was ineligible for DIB. R. 15-27. Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council, which was denied on April 5, 2008, making the ALJ's decision final and appealable. R. 6-9.

**II.     Background**

Plaintiff is a 38 year old male. R. 25. Plaintiff is a high school graduate and is able to communicate in English. R. 25. His past relevant work includes serving as a crew chief for assault amphibious vehicles in the Marine Corps., warehouse shipping and receiving clerk, forklift driver, pettibone driver, electrician laborer, drywall laborer, waiter and bartender. R. 25, 90, 99, 117-25, 487, 519-20.

**A.      Medical Evidence**

Plaintiff alleges that he is disabled by spondylolisthesis and depression. R. 89. Plaintiff lists the date of disability onset as October 4, 2002. *Id.*

**1.      Spondylolisthesis**

On January 8-9, 2003, Plaintiff was examined by the Department of Veterans Affairs ("VA"). R. 151. During the examination, Plaintiff reported of "constant pain in the lower back, occasionally extending to both legs." R. 150-2. Plaintiff also complained of difficulty walking, sitting for more than 5-10 minutes, driving for more than half an hour, stiffness and weakness in the lower back, the inability to lift more than 20 pounds, lack of coordination, loss of balance and flare-ups involving severe pain, causing bed rest "once or twice a week, lasting for several

2

hours." *Id.* During the VA's physical examination, Plaintiff demonstrated normal posture and gait. *Id.* The VA rated Plaintiff's spondylolisthesis as 40% disabling. R. 151. The VA deemed this rating as non-permanent, meaning that the rating was subject to further examination. *Id.* The VA also found that Plaintiff was entitled to individual unemployability effective October 4, 2002. *Id.*

On September 3, 2004, Plaintiff was examined by Dr. Mikhael Taller of Maryland Disability Determination Services and diagnosed with spondylolisthesis and back pain in Axis III. R. 163-8. On September 9, 2004, Plaintiff was examined by Willie Yu, a private physician. R. 169-72. Dr. Yu found that Plaintiff could "sit, stand and transfer [weight] comfortably" and perform other postural tests comfortably. R. 170. Dr. Yu noted that posture changes did not produce "any verbal report of pain or any painful reactions." *Id.* Dr. Yu indicated that Plaintiff could bend 60 degrees with discomfort and that hyperextension of the lumbar spine at 10 degrees caused discomfort. *Id.* According to Dr. Yu, Plaintiff has a "possible disc problem" and "probably ha[d] degenerative disc disease . . .". *Id.*

Plaintiff also saw several physicians at the VA Medical Center. R. 289-95. On October 8, 2004, Plaintiff was examined by Dr. Gale Nicholson. R. 288. Dr. Nicholson found that Plaintiff had "a full range of motion" but limited him to carrying 50 pounds occasionally, 25 pounds frequently and standing, walking and sitting for 6 hours. *Id.* On October 18, Plaintiff was examined by Dr. Robert Zucker. R. 280-7. Dr. Zucker completed a Physical Residual Functional Capacity Assessment ("PRFCA") which confirmed that the limitations imposed by Dr. Nicholson were appropriate. R. 281. In addition, Dr. Zucker found that Plaintiff could push or pull without limitation, but that he could only climb ladders, ropes and scaffolds occasionally. R. 282.

On March 8, 2005, Dr. P. H. Moore completed a second PRFCA on Plaintiff.  R. 296-304.  Dr. Moore's assessment confirmed both Dr. Nicholson and Dr. Zucker's findings.  R. 297-8.  In addition, Dr. Moore found that Plaintiff could frequently balance, kneel, crouch or crawl.  R. 298.  In an accompanying Medical Summary Report, Dr. Moore noted that Plaintiff had no new complaints and that Plaintiff's examination was "unchanged."  R. 304.

        2.      <u>Depression</u>

At his January 8-9, 2003 examination by the VA, Plaintiff also complained that his back problems caused him to have a short temper, impulse control problems, anxiety, panic attacks, constant nervous feelings, depression, sleep problems, anhedonia, poor energy and feelings of hopelessness, worthlessness, helplessness and guilt.  R. 152-3.  However, Plaintiff did not note any suicidal or homicidal problems.  *Id.*  The VA's mental examination revealed distress and psychomotor agitation.  R. 152.  The VA rated Plaintiff's depression as 70% disabling.  *Id.*  The VA deemed this rating to be non-permanent.  R. 151.

On September 29, 2004, Dr. Maryanne Bongiovani examined Plaintiff and completed a Psychiatric Review Technique Form.  R. 174-87.  Dr. Bogiovani diagnosed Plaintiff with "dysthymic disorder, polysubstance dependence in remission and personality disorder . . .".  R. 188.  According to Dr. Bongiovani, the presence of these impairments fell outside of the listings criteria found in 20 C.F.R. §404, Subpt. P, Appendix 1 (the "Listings").[1]  R. 177, 181-2.  Dr. Bongiovani found that Plaintiff's impairments resulted in moderate difficulties in social functioning and mild difficulties in maintaining concentration, persistence or pace.  R. 184.  In an accompanying Mental Residual Functional Capacity Assessment Report, Dr. Bongiovani also

---

[1] The listing criteria for dysthemic disorder is listed under §12.04 (Affective Disorders); the listing criteria for personality disorder is listed under §12.08 (Personality Disorder) and; the listing criteria for polysubstance dependence is listed under §12.09 (Substance Addiction Disorders).

found that Plaintiff was moderately limited in: (1) working in coordination with or proximity to others without being distracted by them; (2) accepting instructions and responding appropriately to criticism from superiors; and (3) getting along with coworkers or peers.  R. 190-1.

On April 19, 2005, Dr. Shawn Hales reviewed Plaintiff's file and affirmed Dr. Bongiovani's assessment.  R. 174.  Dr. Hales also examined Plaintiff in order to determine whether the impairments met the Listings.  R. 306.  Dr. Hales confirmed Dr. Bongiovani's findings that none of Plaintiff's impairments met or equaled the Listings.  R. 317.

### B.     Plaintiff's Testimony

Plaintiff testified to the following facts at the administrative hearing.  R. 484-518.  Plaintiff stated that he suffered from spondylolisthesis, depression and anxiety.  R. 492-3.  Plaintiff said that he had pain in his back that went down both of his legs.  R. 508.  Plaintiff testified that treating doctors told him that his condition would either stay the same or get worse, but that it would not get better.  R. 510.  Plaintiff also offered that he was told that spondylolisthesis would require surgery sometime in the future.  R. 492.  Plaintiff explained that he is the sole caretaker of his two teenage children.  R. 485.  Plaintiff provided that his daily routine comprised of driving his children to and from school and sports practice, completing household chores (primarily washing dishes, preparing dinner and tidying up), watching about 30 minutes of television and napping.  R. 496-9.  Plaintiff testified that when he took naps, on a good day they lasted from 1 ½ -4 hours and on a bad day they lasted most of the day.  Plaintiff stated that he did not get dressed or shower or bathe everyday.  R. 504-5.  Plaintiff offered that he took muscle relaxer and Methadone for pain.  R. 507-8.  Plaintiff explained that he suffered from the following side effects from his medications—nausea, drowsiness, dizziness, loss of concentration, fatigue, memory problems and failing to complete tasks.  R. 517.  Plaintiff stated

5

that he informed his doctors of the aforementioned side effects. R. 494-6. Plaintiff also testified that the side effects of the medication alone would keep him from working. R. 517.

## III.   Standard of Review

The role of this Court is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §405(g); *Hayes v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1983)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." *Johnson v. Califano*, 434 F. Supp. 302, 307 (D. Md. 1977). Ordinarily if there is substantial evidence to support the decision of the Commissioner, then that decision must be upheld. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

The Court must also determine whether the Commissioner followed correct procedures. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman*, 829 F.2d at 517. After review, the Court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. 42 U.S.C. §405(g); *Virek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971).

The steps for evaluation of a disability by the Commissioner are set forth in 20 C.F.R. §404.1520. This five-step process, described by the Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137 (1987), begins with the Commissioner determining whether the claimant is engaged in substantial gainful activity as defined in 20 C.F.R. §404.1571 *et seq.* If the determination is positive, no disability will be found. 20 C.F.R. §404.1520(a)(4)(i).

Second, upon finding that the claimant is not engaged in substantial gainful activity, the Commissioner considers the physical and or mental impairments of the claimant severally and in combination. The impairment or impairments must satisfy the durational requirements. 20 C.F.R. §404.1520(a)(4)(ii).

If a determination is made that the impairments are severe, the analysis then proceeds to the third step – consideration of whether the impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. §404 Subpt. P, App. 1. If one of the Listings is met, disability will be found without consideration of age, education, or work experience. If a Listing is not met, the Commissioner moves to the next step. 20 C.F.R. §404.1520(a)(4)(iv).

The fourth step considers whether the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. A finding that the claimant retains the RFC to perform past relevant work results in a determination that the claimant is not disabled. If the determination is made that the claimant is not capable of performing past relevant work, the Commissioner moves to the last step. 20 C.F.R. §404.1520(a)(4)(iv).

The fifth and final step involves consideration of whether, based upon the claimant's RFC, age, education, and past work experience, the claimant is capable of performing other work. The burden of proof shifts to the Commissioner at this stage. If the claimant suffers

solely from exertional impairments, the Medical-Vocational Guidelines, as defined in 20 C.F.R. Pt. 404, Subpt. P, App. 2, provide rules to be applied in determining whether a claimant is disabled.  If findings of fact concerning the claimant's vocation factors (age, education, work experience) and RFC coincides with the criteria in a rule, "the rules directs a conclusion as to whether the individual is or is not disabled."  20 C.F.R. Pt. 404, Subpt. P, App. 2, §200.00(a).  If the findings of fact do not coincide in all respects with the criteria of the rule, or if the claimant suffers from both exertional and non-exertional impairments, the Commissioner will use other methods, such as the testimony of a vocational expert ("VE"), to determine whether the claimant is still capable of some work.  If the claimant is not capable, disability is found.  20 C.F.R. §404.1520(a)(4)(v).

**IV.    Analysis**

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. §§404.1520, 416.920 and found in relevant part:

1. At the first step, the ALJ determined that Plaintiff had not engaged in substantially gainful activity since October 4, 2002.  R. 20.

2. As the second step, the ALJ determined that the medical evidence indicated that Plaintiff has severe impairments, including degenerative disc disorder and affective disorder.  R. 20

3. At the third step, the ALJ determined that the evidence did not support a finding that Plaintiff's impairments, either singly or in combination, were of a severity to meet or equal the criteria of any of the listed impairments found in 20 C.F.R. §404, Subpt. P, Appendix 1.  R. 20-1.

4. At the fourth step, the ALJ determined that Plaintiff retained RFC to lift and carry up to 50 pounds occasionally, 25 pounds frequently, to stand, walk or sit for 6 hours during an ordinary 8 hour day "at a job that might occasionally require climbing ramps, stairs and bending, avoiding ladders, ropes and scaffolds" and limiting Plaintiff to simple tasks due to side effects experienced from medications. R. 21. The ALJ found that Plaintiff was unable to return to any past relevant work. R. 25.

5. At the fifth step, the ALJ concluded based on the testimony of a VE, that given Plaintiff's RFC, he could perform numerous jobs in the local and national economy. R. 26.

### A. The ALJ's Evaluation of Medical Records and Reports

Plaintiff claims that the ALJ erred by failing to accord proper weight to medical evidence within the record. First, Plaintiff argues that the ALJ failed to give proper deference to the opinion rendered by the VA based on its January 8-9, 2003 examination of Plaintiff.[2] Second, Plaintiff argues that the ALJ did not give proper weight to the opinions and reports of treating physicians. The ALJ must consider all available evidence in his evaluation. SSR 96-8p. This includes both VA opinions and the opinions of treating physicians. *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983). Both the opinions of other government agencies and treating physicians are entitled to "great weight" in the ALJ's analysis. *Id.*; See also *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (reversing and remanding Commissioner's

---

[2] According to Plaintiff, the ALJ's analysis with regard to the VA evaluation was improper because "(1) as a matter of fact, the ALJ was incorrect in thinking that the VA found the claimant to be only "partially disabled," because "individual unemployability" is equivalent to a 100% disability rating; [and] (2) as a matter of law, the ALJ did not give proper deference to, and did not properly analyze, the VA's ruling . . .". The role of this Court is to determine whether substantial evidence support's the Commissioner's decision and whether the Commissioner applied the correct legal standard. 42 U.S.C. §405(g); *Hayes*, 907 F.2d at 1456; *Coffman*, 829 F.2d at 517. Accordingly, this Court's review is limited to Plaintiff's allegations with regard to the ALJ's mistakes of law.

decision based on ALJ's failure to consider the VA finding that claimant was 80% disabled due to his depression and lower back injury). However, the ALJ may only rely on "acceptable medical sources" to provide evidence of the existence of a medically determinable impairment. SSR 06-03p.

The ALJ must analyze a VA opinion pursuant to Social Security law. *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). This requires the ALJ to conduct an independent evaluation of the VA opinion. SSR 06-03p. After analyzing the VA opinion in this case, the ALJ determined that the decision was, "an unqualified opinion with no indication of what credentials the opinion maker possesses . . .". R. 25. As the ALJ was unable to determine the author of the VA opinion, their credentials or the basis for their opinion, the ALJ correctly refused to provide the VA opinion significant weight.

Plaintiff does not identify a single medical opinion that he believes the ALJ failed to accord proper weight. Based on the Court's review of the record, the Court has determined that the ALJ properly considered all available medical opinions and accorded "preponderant weight" opinions which were consistent with the rest of the evidence in this case. *See Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("An ALJ must weigh all the evidence and may not ignore evidence that suggests the opposite conclusion."). Accordingly, the Court finds that the ALJ properly weighed to all medical opinions within the record.

### B.    The ALJ's Evaluation of Plaintiff's Psychiatric Impairments

Plaintiff contends that the ALJ did not properly follow the administrative review process by determining that Plaintiff suffered from "an affective disorder" without indentifying the specific psychiatric impairment. When evaluating a claimant's mental impairments, the ALJ must follow a special technique outlined in 20 C.F.R. §404.1520a(b) at each level in the

administrative review process.  The ALJ must document application of this technique in his decision.  20 C.F.R. §404.1520a(e).  The ALJ must first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine whether a medically determinable mental impairment exists.  20 C.F.R. §404.1520a(b)(1).  If a medically determinable mental impairment exists, the ALJ must rate the degree of functional limitation.  20 C.F.R. §404.1520a(b)(2).  To rate the degree of functional limitation, the ALJ must consider "all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."  20 C.F.R. §404.1520a(c)(1).  The ALJ must make findings as to the degree of restrictions, if any, in four areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. §404.1520a(c)(3).

The ALJ did not properly follow the special technique outlined in 20 C.F.R. §404.1520a(b) to evaluate Plaintiff's psychiatric impairments.  The ALJ failed to specify Plaintiff's medically determinable mental impairment as required by 20 C.F.R. §404.1520a(b)(1).  The ALJ noted that Plaintiff had been diagnosed with depressive disorder, generalized anxiety disorder and post-traumatic stress disorder.  R. 20.  However, the ALJ only specified the "symptoms, signs, and laboratory findings" that substantiated the presence of depression.  The ALJ's decision does not provide analysis regarding whether Plaintiff's diagnoses of generalized anxiety disorder and post-traumatic stress disorder are medically determinable.  Furthermore, at step three of the administrative review process, the ALJ found that the Plaintiff suffered from a severe "affective disorder," but failed to specify the affective disorder.  R. 20.  Accordingly, the Court finds the ALJ's discussion lacking and remands this

case for proper analysis.

### C. The ALJ's Evaluation of Plaintiff's Subjective Complaints

Plaintiff alleges that the ALJ did not properly evaluate his subjective complaints of pain, fatigue and numbness. In response, Defendant argues that Plaintiff's subjective complaints were not consistent with the medical evidence or treatment prescribed. The ALJ is charged with considering all of the claimant's symptoms "including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a). Before analyzing the effect of subjective symptoms, however, the ALJ must find the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, such as pain, fatigue or numbness. 20 C.F.R. §404.1529(b). In the absence of such an impairment, the symptoms will not be found to affect a claimant's ability to do basic work activities. *Id.* When a medically determinable impairment that could reasonably cause the alleged symptoms is found, the intensity of the symptoms must be evaluated, which includes both objective and subjective medical evidence. 20 C.F.R. §404.1529(c). The ALJ should carefully consider any additional information the claimant submits about his or her symptoms, including what precipitates or aggravates symptoms, what medications or treatments alleviate them, and how the symptoms affect daily life. *Id.* Any symptom-related functional limitations that can reasonably be accepted as consistent with the objective medical evidence, including statements about the intensity, persistence and limiting effects of the symptoms, will be taken into account in reaching a conclusion regarding whether a claimant is disabled. 20 C.F.R. §404.1529(c)(3)-(4).

The ALJ is not required to accept, without more, a Plaintiff's subjective assertions of disabling pain and subjective assessment of the degree of that pain. *Craig v. Chater*, 76 F.3d 585, 591 (4th Cir. 1996). The Fourth Circuit has clarified that, in order for subjective complaints to be found disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to cause "not just pain, or some pain, or pain of some kind or severity, *but the pain the claimant alleges [he] suffers*. The regulation thus requires at the threshold a showing . . . of a medical impairment 'which could reasonably be expected to produce' the actual pain." *Id*. at 592 (citations omitted) (emphasis in original). The *Craig* court emphasized the significance of this conjunctive finding and remanded the case to the Commissioner to make an explicit finding of such. To make a finding of an impairment without making a finding of whether that impairment could cause the alleged symptoms is insufficient.[3] The ALJ may find that the claimants subjective complaints are not credible based on a consideration of the entire case record if, "the individual's statement's about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence . . .". SSR 96-7p at *2.

The Court finds that the ALJ's discussion regarding Plaintiff's subjective complaints is lacking. The ALJ found that Plaintiff suffered from severe impairments at step two of the analysis. The ALJ discussed Plaintiff's history of back complaints and depression. R. 21-5. The ALJ then discussed the treatment prescribed for Plaintiff's impairments and his ability to continue daily activities. *Id.* However, the ALJ did not, consistent with *Craig* and SSR 96-7p, make a finding regarding whether the objective medical evidence (presumably that which led to

---

[3] SSR 96-7p states that "if there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities."

finding of severe impairments, degenerative disc disorder and affective disorder) "*could reasonably be expected to cause the pain, [fatigue and numbness] the claimant alleges []he suffers.*" *Craig*, 76 F.3d at 592. Nor did the ALJ explain how objective evidence within the record undercut Plaintiff's credibility with regard to complaints of pain, fatigue and numbness. It is impossible for this Court to ascertain whether the ALJ's discussion is effectively a finding that (1) at the threshold level, Plaintiff's medically determinable impairment is not one capable of causing the pain Plaintiff alleges he suffers; or (2) Plaintiff's impairments meets the threshold requirement but that allegations of symptoms he makes are not credible enough for the ALJ.

Even if the ALJ had affirmatively made a threshold finding, the ALJ's discussion is still deficient. The ALJ is required to evaluate the intensity, persistence and limiting effects of the claimant's alleged symptoms. SSR 96-7p, at *2. The ALJ must also carefully consider the factors that tend to precipitate or aggravate the symptoms. 20 C.F.R. §404.1529. The ALJ's discussion of Plaintiff's subjective complains is void of such an assessment and gives the Court reason to remand this case for proper analysis.

### D.  The ALJ's Evaluation of Plaintiff's Activities of Daily Living

Plaintiff contends that the ALJ failed "to develop the record with regard to the frequency, intensity, duration, and pace of each activity [of daily living]." Specifically, Plaintiff argues that the ALJ did not indicate that it takes much longer for Plaintiff to complete some activities and that, on some days, he is unable to perform the activities at all. In addition, Plaintiff argues that the ALJ stated that Plaintiff used the treadmill without indicating that he was advised by physicians to exercise as much as possible.

The ALJ's decision states in pertinent part:

> [Plaintiff] resides with his family in an apartment. He is independent in activities of daily living and also cares for his two children. [Plaintiff] does have some difficulty with dressing and showering secondary to back pain. However, most of his day revolves around caring for his children and caring for his home. In a normal day, [Plaintiff] gets up and gets his children ready for school. He drives the children to school, then comes home and cleans up the house including doing the dishes, wiping off the counter etc. [*sic*] [Plaintiff] then naps through the day. When his daughter comes home from school he cares for her and also prepares dinner. After cleaning up he relaxes. R. 21.

This description of Plaintiff's daily activities is supported by the record, including Plaintiff's own statements. See R. 125-7. Moreover, Plaintiff's allegation that the ALJ failed to mention that exercise was part of Plaintiff's treatment regimen is simply not true. See R. 22 (Plaintiff's treatment included back exercises, back and core strengthening and physical therapy). As such, the Court finds Plaintiff's allegation that the ALJ failed to properly evaluate his activities of daily living without merit.

### E.     The ALJ's Hypothetical to the Vocational Expert

Plaintiff asserts that the ALJ erred as a matter of law at step five of the disability determination process for failing to pose a hypothetical question that included all of Plaintiff's limitations. Specifically, Plaintiff contends that the ALJ failed to include all of Plaintiff's exertional and non-exertional limitations. In addition, Plaintiff contends that the ALJ failed to include any symptoms of psychiatric impairments in his question to the VA, despite finding that Plaintiff suffered from at least one severe psychiatric impairment that "significantly restricted the claimant from performing some work activities." R. 20.

In *Walker v. Bowen*, the court outlined the standard for a vocational expert's opinion:

> In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's

impairments.

*Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). The purpose of the VE's testimony is to assist in the last step of the disability evaluation, in which the ALJ considered RFC assessment, age, education and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §404.1520(a)(5). Accordingly, the hypothetical question is limited to the ALJ's RFC assessment and does not need to include evidence which the ALJ does not find credible. Nonetheless, because this Court finds that the ALJ failed to properly develop the record, it declines to determine at this time whether a proper hypothetical question was set forth.

**V.      Conclusion**

Based on the foregoing, the Court DENIES Plaintiff's Motion, DENIES Defendant's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

                                                      ____/s/_____
                                                      Charles B. Day
                                                      United States Magistrate Judge
                                                      August 21, 2009

Copies to:

| | |
|---|---|
| Alan J. Nuta, Esq. | Allen F. Loucks, Esq. |
| 702 Russell Avenue, Suite 300 | Assistant United States Attorney |
| Gaithersburg, Maryland 20877 | 36 South Charles Street, 4th Floor |
| | Baltimore, Maryland 21201 |